DOWD, J.

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| Kelly Mendenhall, | ) | |
| | ) | CASE NO. 5:06 CV 139 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| The City of Akron, et al, | ) | |
| | ) | |
| Defendant(s). | ) | |
| | ) | |

-----------------------------------------------------

| | | |
|---|---|---|
| Janice Sipe, et al, | ) | |
| | ) | CASE NO. 5:06 CV 154 |
| Plaintiff(s), | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Nestor Traffic Systems, et al, | ) | |
| | ) | |
| Defendant(s). | ) | |
| | ) | |

### MEMORANDUM OPINION

### I. Introduction

These two cases have in common attacks by the plaintiffs on an Akron city ordinance calling for civil penalties for Automated Mobile Speed Enforcement System Violations.

The Court conducted a Case Management Conference (CMC) in both of the cases on February 21, 2006, and noted that it had questions about its jurisdiction and in particular,

(5:06 CV 139)
(5:06 CV 154)

whether any form of abstention applies. The Court also noted the existence of two pending motions. In the Mendenhall case, the plaintiff had a motion to remand and in both cases, the defendants had filed motions for judgment on the pleadings. Since the CMC, numerous additional briefs have been filed regarding the issues raised by the Court.

## II.  Agreed Stipulations

To assist the Court, counsel for the parties have entered Agreed Stipulations. See Docket No. 29 in 06 CV 139 (Mendenhall) and Docket No. 19 in 06 CV 154 (Sipe). The Agreed Stipulations are identical with respect to the first 20 stipulations and they follow:

A. Common Agreed Stipulations

1. After a hit and run accident resulting in the death of a child in a school cross walk, the Akron City Council passed Ordinance 461-2005 enacting Chapter 79 "Automated Mobile Speed Enforcement System" and Section 79.01 entitled "Civil Penalties for Automated Mobile Speed Enforcement System Violations" on September 12, 2005. Said ordinance having been approved and signed by the Mayor of the City of Akron on September 19, 2005.

2. The stated purpose of the legislation was that "it is desirable to reduce the danger from vehicle operators speeding in and around school zones;" and because "frequent incidents of speeding create a substantial risk to the safety of children in school zones and crosswalks;" and "an automated mobile speed enforcement system will assist the Akron Police Department by alleviating the need for conducting extensive conventional traffic enforcement in and around school zones."

3. The City of Akron and Nestor Traffic Systems, Inc. entered into a contract on October 6, 2005, wherein Nestor Traffic Systems, Inc. would install and assist the municipality in the administration and operation of a mobile speed violation detection system within the City of Akron.

2

(5:06 CV 139)
(5:06 CV 154)

    4.    The Akron ordinance provides for civil enforcement imposing monetary liability upon the owner of a vehicle for the vehicle's failure to comply with the posted speed limits in school zones and streets or highways within the City of Akron including crosswalks used by children going to or leaving school during recess and opening and closing hours.

    5.    The criminal justice system is not involved, the offender is not issued a criminal traffic citation by a police officer, the offender is not summoned to the traffic court in the Akron Municipal Court, nor are points assessed against the driver or owner's driving record by the Bureau of Motor Vehicles.

    6.    The Akron Ordinance, Section 79.01 entitled "Civil Penalties for Automated Mobile Speed Enforcement System Violations" did not change the speed limits set by the State of Ohio.

    7.    If a vehicle's rate of speed exceeds the posted speed limit, the owner of the vehicle is issued a "notice of liability." The notice includes photographs of the vehicle, the vehicle's license plate, the date, time, and location of the violation, the posted speed, the vehicle speed, and the amount of the civil penalty.

    8.    The violation is assigned a civil violation number and a notice of liability is issued to the owner of the vehicle via regular U.S. Mail. Also included is a remittance form stating the amount of the civil penalty and the address where the check or money order is to be mailed. The form also explains that the owner has three options:  1) to pay the amount due; 2) to sign an affidavit that the cited vehicle is leased or stolen; or 3) to exercise the right to an administrative appeal.

    9.    If the owner of the vehicle wishes to have an administrative appeal pursuant to Section 79.01(F) of the Code of Ordinances of the City of Akron, the owner is instructed to complete and mail the notice of appeal section of the violation form within 21 days of the date listed on the civil citation.

    10.    The photographs of the vehicle and license plate are reviewed by technicians of Nestor Traffic Systems, Inc. for purposes of clarity and to make certain the automobile in the photograph is the same as the automobile registered to that license plate.

(5:06 CV 139)
(5:06 CV 154)

    11.    The photographs of the civil violation are also reviewed by a member of the Akron Police Department for clarity and to make certain that the automobile is the same as the automobile registered to that license plate.

    12.    If the vehicle and the license plate do not match, the civil violation is dismissed.

    13.    The ordinance provides that the Mayor of the City of Akron shall appoint a hearing officer as an independent third party to hear administrative appeals through an administrative process established by the City of Akron.  On December 7, 2005, the Mayor appointed Pam Williams to hear the administrative appeals.

    14.    Pursuant to the ordinance, failure to give notice of appeal or failure to pay the civil penalty within 21 days constitutes a waiver of the right to contest the citation and is considered an admission of a violation of the ordinance.

    15.    If the civil penalty is not paid, the City must institute a separate civil action to collect the debt.

    16.    The vehicle owner is the person or entity identified by the Ohio Bureau of Motor Vehicles as the registered owner of the vehicle and is civilly liable for the penalty imposed for excessive speed.  By the terms of the Ordinance, the owner of a vehicle shall not be responsible for the civil penalty if within 21 days from the date listed on the notice of liability the owner signs an affidavit stating the name and address of the person or entity who leased the vehicle in a lease of 6 months or more, or if the owner produces a law enforcement incident report from a state or local law enforcement agency or record bureau stating that the vehicle involved was reported stolen before the time of the violation.

    17.    If the vehicle owner requests an administrative appeal by mailing in the request for an administrative hearing, they are notified of a hearing date before the administrative hearing officer.

    18.    The following explains the administrative hearing process:

        • the independent hearing officer tape records the entire proceeding to preserve the record;

        • an Akron Police officer is present to verify the information provided;

(5:06 CV 139)
(5:06 CV 154)

> • the hearing officer explains the appeal process, indicating that the hearing is civil not a criminal or traffic trial and explains that there will be no traffic record or points on the driver's license, that the hearing officer's responsibility is to determine whether she can clearly identify the vehicle, license plate and to whom the license plate is issued, that she will determine whether a preponderance of the evidence establishes if a violation of Section 79.01 of the Codified Ordinances of City of Akron occurred and if the owner is liable;
>
> • the computer generated recorded images of the vehicles, license plates of the vehicles, ownership of the vehicles, the date and speed of the vehicles are admissible in the administrative appeal process, are available for review by the appealing party, and are considered prima facie proof of the civil violation;
>
> • any witness wishing to testify is sworn in by the hearing officer.

19. If the independent hearing officer sustains the appeal, the civil citation is dismissed and no civil penalty is assessed.

20. If the independent hearing officer denies the appeal, the civil fine is assessed.

The Agreed Stipulations differ with respect to the plaintiff Mendenhall and the plaintiff Sipe.

B. The additional Agreed Stipulations in the Mendenhall Case.

21. On November 2005, Plaintiff Kelly Mendenhall, resident of the City of Akron, Ohio, received an automated mobile speed enforcement citation for going 39 mph in a 25 mph speed zone on Copley Road in the City of Akron, Ohio near Erie Island Elementary School.

22. Plaintiff Mendenhall exercised her right to request an administrative hearing and appeared before the independent hearing officer with counsel, her husband, Attorney Warner Mendenhall.

23. Plaintiff Mendenhall's administrative appeal was sustained by the independent hearing officer based upon facts that in early November 2005,

5

(5:06 CV 139)
(5:06 CV 154)

        and on the date she received the civil speeding citation, the 25 mph speed sign was either vandalized or missing bound traffic and her civil speeding citation was dismissed.  No civil penalty was assessed and the citation was dismissed.

24.    On December 13, 2005, Plaintiff Mendenhall filed a complaint and class action for declaratory judgment, injunctive relieve and for a money judgment against City of Akron and all of its City Council Members in their official capacity and Nestor Traffic Systems, Inc. of Providence, Rhode Island.

25.    Defendant City of Akron and Nestor Traffic Systems, Inc. removed the case to the United States District Court for the Northern District of Ohio, Eastern Division.

26.    Plaintiff subsequently dismissed the City Council Members.

27.    Plaintiff Mendenhall claims the Akron ordinance is invalid.  She claims it is in violation of her due process rights guaranteed by the Ohio and United States Constitutions; that the Akron ordinance violates Article XVIII Section 3 of the Ohio Constitution commonly referred to as the Home Rule Amendment in that she alleges Ohio Revised Code Section 4511.07 is a general law of the laws of the State of Ohio and that the Akron ordinance is in conflict therewith; that the Akron ordinance violates public policy of the State of Ohio regarding due process by implication of a conflict with Revised Code Sections 4521.02 through 4532.08; and that the Akron ordinance forces individuals challenging citations to waive their rights under the Fifth Amendment to the United States Constitution in order to defend themselves.

28.    The City of Akron is a Charter municipality pursuant to Section 7 of Article XVIII of the Ohio Constitution.

C.  The additional Agreed Stipulations in the Sipe Case.

21.    It is the position of the Defendants that the right to appeal the decision of the independent hearing officer's decision to the Court of Common Pleas is governed by Chapter 2506 of the Ohio Revised Code.  It is the position of the Plaintiffs that the right to appeal the decision of the independent hearing officer's decision to the Court of Common Pleas is not governed by Chapter 2506 of the Ohio Revised Code.

6

(5:06 CV 139)
(5:06 CV 154)

22. Ohio Revised Code Chapter 2506: "Appeals From Orders Of Administrative Officers and Agencies" is the chapter of the Ohio Revised Code establishing the right to appeal every final order, adjudication, or decision of any officer, tribunal, authority, board, bureau, commission, department or other decision of any political subdivision of the state to be reviewed by the Court of Common Pleas of the county in which the principal office of political subdivision is located.

23. Not used.

24. On November 18, 2005, Plaintiff Janice A. Sipe was issued a civil speeding violation for going 45 mph in a 35 mph zone on Newton Street.

25. On November 4, 2005, Plaintiff Joanne L. Lattur was issued a civil speeding violation for going 30 mph in a 20 mph school zone on Fouse Street in the City of Akron, Ohio.

26. On October 31, 2005, Plaintiff Wayne H. Burger was issued two civil speeding violations twenty minutes apart for going 29 mph in a 20 mph school zone and for going 31 mph in the same 20 mph school zone on Fouse Street in the City of Akron, Ohio.

27. Plaintiff Janice A. Sipe did not exercise her right to request an administrative hearing within 21 days nor has she requested an administrative hearing at any time from the date of her civil citation to present nor has she paid the assessed civil fine.

28. Plaintiff Joanne L. Lattur did not exercise her right to request an administrative hearing within 21 days nor has she requested an administrative hearing at any time from the date of her civil citation to present nor has she paid the assessed civil fine.

29. Plaintiff Wayne H. Burger exercised his right to request an administrative hearing on one of his violations. An administrative hearing was scheduled on December 29, 2005, and Plaintiff Wayne H. Burger was notified of the administrative hearing date, however, he failed to appear at the administrative hearing. Plaintiff Wayne H. Burger made no contact with the City of Akron, the Akron Police Department, or Nestor Traffic Systems, Inc. before or after the December 29, 2005 hearing date to reschedule the matter or request a new hearing date. The independent

(5:06 CV 139)
(5:06 CV 154)

>   hearing officer denied the appeal based on his failure to appear at the hearing. Plaintiff Burger has not paid his assessed civil penalty for that violation. The City of Akron dismissed Burger's second violation as it did others who received two tickets in the same day at the beginning of the program.

30. On December 9, 2005, Plaintiffs Sipe, Lattur and Burger filed an action in Summit County Common Pleas Court entitled "Class Action Complaint Verified For Injunctive Relief" naming as Defendants Nestor Traffic Systems, Inc. of Providence, Rhode Island, four officers of Nestor Traffic Systems, Inc. named individually, the City of Akron, Ohio and ten unnamed John Does. Plaintiffs requested that the Clerk of Courts withhold service on the Complaint.

31. On December 12, 2005, Plaintiffs Sipe, Lattur, and Burger filed their First Amended Complaint. Said Complaint was served on the City of Akron on December 30, 2005, and served on Nestor Traffic Systems, Inc. on January 3, 2006. On December 13, 2005, Plaintiffs Sipe, Lattur, and Burger filed a Motion for Temporary Restraining Order and a Motion for Preliminary Injunction but they have not attempted service on any of the Defendants nor have the Defendants ever been served with these Motions. Defendants obtained a copy of the Motions from the Summit County Common Pleas Court website.

32. On December 16, 2005, Plaintiffs Sipe, Lattur, and Burger filed a Second Amended Complaint, which has never been served upon any of the Defendants. Defendants obtained a copy of the Second Amended Complaint from the Summit County Common Pleas Court website.

33. Defendants City of Akron and Nestor Traffic Systems, Inc. removed the case to the United States District Court for the Northern District of Ohio Eastern Division. The case was originally assigned to Judge James S. Gwinn [sic] and subsequently transferred to the docket of Judge David D. Dowd, Jr. pursuant to Local Rule 3.1(b)(3).

34. Plaintiffs Sipe, Lattur, and Burger filed an eleven count, 121 paragraph Complaint alleging as follows:  Count I – Fraud, Count II – Civil Conspiracy, Count III Common Plan/Design to Commit Fraud, Count IV – Negligence, Count V – Negligence Per Se, Count VI – Consumer Sales Practices Act, Count VII – Negligence/Nuisance, Count VIII – Conversion, Count IX – Invasion of Privacy, Count X – Injunctive Relief,

(5:06 CV 139)
(5:06 CV 154)

> Count XI – 42 U.S.C. Sections 1983 and 1988, and the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution/Abuse of Process.

35. The City of Akron is a Charter municipality pursuant to Section 7 of Article XVIII of the Ohio Constitution in that Akron having established a Charter form of government may adopt an amended a Charter for its government and subject to the provisions of Section 3 of Article XVIII of the Ohio Constitution may exercise under the Charter all powers of local self government.

### III. The Mendenhall Motion to Remand

The Mendenhall case was removed from the Common Pleas Court of Summit County. The removal prompted a motion by the plaintiff for a remand (Docket No. 10). The defendants filed a brief in opposition (Docket No.13) and the plaintiff filed a reply (Docket No. 22).

The motion for removal cited federal claims advanced by the plaintiff in support of the remand, citing 28 U.S.C. §§1331[1] and 1441 (b)[2]. No similar motion has been filed in the Sipe case.

---

[1] 28 U.S.C. Section 1331 provides:

The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

[2] 28 U.S.C. Section 1441(b) provides:

Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties. Any other such action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.

9

(5:06 CV 139)
(5:06 CV 154)

*Taylor v. Anderson*, 234 U.S. 74, 75-76 (1914) teaches that whether a federal action arises under federal law "must be determined from what necessarily appears in the plaintiff's statement of his own claim."

The plaintiff, in support of the motion to remand, describes her action as a request for a declaratory action under state law. The defendants respond by pointing out the claims raised in the plaintiff's complaint in state court seeking a declaratory action that the Akron Ordinance described in Agreed Stipulation No. 1 is unconstitutional.

Specifically, the Mendenhall complaint states in relevant part as follows:

> This law cannot be enforced against the Plaintiff because the ordinance is invalid in its entirety for, *inter alia*, the following reasons:
>
>> a) Persons who wish to contest their citations are limited to a single hearing that is not subject to any prescribed rules of procedure or evidence, and is not heard by an impartial tribunal, but is decided by an as-yet-unnamed appointee of Mayor Donald Plusquellic, whose decision is final and - under the terms of the code - not subject to judicial review or further appeal, <u>all of which violate the due process rights guaranteed by the Ohio and United States Constitutions;</u>
>>
>> b) The Code violates Ohio Constitution Article XVIII, § 3, which prohibits municipal corporations from enacting ordinances contrary to the general laws of the State of Ohio, in that the Code violates R.C. § 4511.07, which does not authorize local authorities to enact their own laws regarding the speed of vehicles on streets and highways except for in public parks, and which restricts the authority of local governments to enact ordinances treating existing criminal traffic offenses as noncriminal to only cases involving parking violations;
>>
>> c) The code in its present form violates the public policy of the State of Ohio and the intent of the Ohio General Assembly regarding due process, as implied by R.C. §§ 4521.02 through

10

(5:06 CV 139)
(5:06 CV 154)

> 4532.08, which require that a municipal corporation enacting laws for enforce parking violations as noncriminal offenses must first establish a regulatory scheme that includes a hearing governed by designated rules of evidence and procedure, sets forth specific qualifications for hearing officers, and provides a mechanism for judicial review; and
>
> d) <u>The Code in its present form forces individuals challenging citations to waive their rights under the Fifth Amendment to the United States Constitution in order to defend themselves.</u> (Emphasis added)

It is apparent from the face of the plaintiff Mendenhall complaint that she has raised federal claims. Thus, the removal from state court to United States District Court was justified under the provisions of 28 U.S.C. §1441(b).

The Mendenhall motion to remand is DENIED.

### IV.  The Abstention Issue

The Court requested all parties to brief the possibility that principles of abstention might require the Court to decline to rule on the merits of the dispute. No party suggested that the Court was prevented by any of the various types of abstention from ruling on the merits of the case. Normally, the Court considers the possibility of *Younger, Colorado River, Burford* and *Pullman* abstention. As the parties agree that no state action is pending, neither *Younger* nor *Colorado River* abstention apply. The Court concludes that the issues raised by this case do not involve complex analysis of state laws and thus the Court finds that *Burford* abstention does not apply. Finally, the Court concludes that the issue of whether Akron's ordinance imposing civil

11

(5:06 CV 139)
(5:06 CV 154)

penalties conflicts with state law does not create a novel or unclear issue requiring *Pullman* abstention.

### V. The Motions for Judgment on the Pleadings

A. Does the City of Akron have the power to adopt legislation calling for civil penalties for Automated Mobile Speed Enforcement System Violations?

The Court answers the question in the affirmative after reviewing the extensive case law that has developed since the adoption of the Home Rule Amendment to the Ohio Constitution.[3]

Stated simply, the Court finds that the many pronouncements of the Ohio Supreme Court stand for the proposition that in determining whether a municipal ordinance, such as the challenged ordinance of the City of Akron, is in "conflict" with the general laws of Ohio, the test whether the Akron ordinance permits or licenses that which the Ohio statutes forbid and prohibit and vice versa. In this case, the Court finds that the challenged ordinance neither permits or licenses that which the laws of the Ohio General Assembly either forbid or prohibit and vice versa.

---

[3]See *Village of Struthers v. Sokol*, 108 Oh. St. 263(1923); *City of Youngstown v. Evans*, 121 Oh. St. 342(1929); *City of Columbus v. Barr*, 160 Oh. St. 209(1953); *City of Cleveland v. Betts*, 168 Oh. St. 386(1958); *City of Toledo v. Best*, 172 Oh. St. 371(1961); *City of Cleveland v. Raffa*, 13 Oh. St. 2d (112)(1968); *Columbus v. Molt*, 36 Oh.St. 2nd 94(1973); *Bailey v. City of Martins Ferry*, 46, Oh. St. 2d 95(1976); *Fonessy Enterprises v City of Oregon*, 23 Oh.St. 3d 213(1986) and *Geauga County Board of Commissioners v. Munn Road Sand & Gravel,* 67 Oh. St. 3d 579(1993).

12

(5:06 CV 139)
(5:06 CV 154)

B. Does enforcement of the Akron City Ordinance violate, as claimed by the plaintiffs Mendenhall and Sipe, the United States Constitution by taking property without due process of law?

It is the position of the City and the defendants in the Sipe case that the civil penalties can be imposed on the owner of the vehicle without regard as to whom was the driver of the offending vehicle.

This position brings into consideration a number of decisions of the United States Supreme Court dealing with the enactment of civil penalties for what might well be considered a criminal violation. See for example, *Kennedy v. Mendoza-Martinez*, 372 U.S. 144(1963); *Memphis Light, Gas & Well Division v. Craft*, 436 U.S. 1(1978); *United States v. Ward*, 448 U.S. 242(1980); *United States v. Halper*, 490 U.S. 435(1989); *Kansas v Hendricks*, 521 U.S. 346(1997); *Hudson v. United States*, 522 U.S. 93(1997).

The Court also has the benefit of the fairly recent opinion in *Gardner v. City of Columbus,* 841 F.2d 1272 (6th Cir. 1988) addressing the City of Columbus ordinance which provided civil penalties for parking violations. The *Gardner* decision in relevant part declared:

> As the basis for most of their constitutional arguments, appellants assert that Chapter 2150's fines and penalties are penal in nature. The appellees argue and the district court held that the sanctions of Chapter 2150 are civil sanctions based on the analysis of *United States v. Ward*, 448 U.S. 242, 100 S.Ct. 2636, 65 L.Ed.2d 742 (1980).
>
> In *Ward*, the Court summarized the two level test for determining whether a penalty is civil or criminal, noting that the issue is one of statutory construction.
>
>> First, we have set out to determine whether [the legislature], in establishing the penalizing mechanism, intended either expressly or impliedly a preference for one label or another. Second, where [the legislature] has indicated an intention to establish a civil

13

(5:06 CV 139)
(5:06 CV 154)

> penalty, we have inquired further whether the statutory scheme was so punitive either in purpose or effect as to negate that intention.

*Id*. at 248-49, 100 S.Ct. at 2641 (citations omitted).  In making the latter inquiry, "only the clearest proof could suffice to establish the unconstitutionality of a statute on such a ground." *Id* at 249, 100 S.Ct. at 2641 (quoting *Fleming v. Nestor*, 363 U.S. 603, 617, 80 S.Ct. 1367, 1376, 4 L.Ed.2d 1435 (1960)).  Finally, the Court found the seven considerations listed in *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168-69, 83 S.Ct. 554, 56y8-69, 9 L.Ed.2d 644 (1963) useful in making the latter inquiry.  The Court notes, however, that the list is neither exhaustive or dispositive.  *Ward*, 448 U.S. at 249, 100 S.Ct. at 2641.  The standards set forth in *Mendoza-Martinez* were

> [w]hether the sanction involves an affirmative disability or restraint, whether it has historically been regarded as a punishment, whether it comes into play only on a finding of *scienter*, whether its operation will promote the traditional aims of punishment – retribution and deterrence, whether the behavior to which it applies is already a crime, whether an alternative purpose to which it may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned....
> *Mendoza-Martinez*, 372 U.S. at 168-69, 83 S.Ct. at 567-68 (footnotes omitted).

Gardner, 841 F.2d at 1276-1277.

Based upon the standard of law described above, the Sixth Circuit affirmed the decision

of the district court:

> The district court found it "abundantly clear" that the Ohio legislature and the Columbus City Council intended penalties for parking infractions to be civil in nature.  The court's conclusion is supported by Chapter 4521 of the Ohio Revised Code which is entitled "Local, Noncriminal Parking Infractions."  Section 4521.02 speaks of any ordinances, resolution or regulation that regulates the standing or parking of vehicles.  The section authorizes local authorities to "specify that a violation of the regulatory ordinance, resolution or regulation shall not be considered a criminal offense for any purpose [and] that a person who commits the violation shall not be arrested as a result of the commission of the

(5:06 CV 139)
(5:06 CV 154)

violation." Ohio Rev.Code Ann. 4521.02(A) (Page 1982). Also, the Columbus City Code states that the commission of a parking infraction within the City of Columbus "shall not be considered a criminal offense for any purpose." § 2150.02(A). Finally, no person may be arrested as the result of a parking infraction, § 2150.03(F), and administrative judgments filed with the Clerk of the Municipal Court have the same force and effect as monetary judgments in civil actions rendered by the court, § 2150.07(C). Based on the foregoing, we agree with the district court's conclusion that the legislature intended provisions of Chapter 2150 to be regulatory in character and its penalties civil in nature.

Having concluded that the state and the city had a manifest intent to consider the penalties for parking violations as civil penalties the court moved on to level two of the *Ward* analysis and applied the *Mendoza-Martinez* standards to Chapter 2150. After applying these standards, the court concluded that plaintiffs had not established by the "clearest proof" that the penalties are punitive either in purpose or effect.

Appellants argue that Chapter 2150's sanctions are penal in nature based on the application of the fifth and sixth factors of *Mendoza-Martinez*. They argue that the penalties are penal in nature because the same infractions are criminal offenses under state law, and because they have no relation to damages, harm or cost to the city.

Appellant's first argument is not supported by logic or law. As the district court noted, the fatal flaw in this argument is that the criminal sanctions have been imposed by an entirely separate jurisdiction. Furthermore, the Court in *Ward* made it clear that the fact that a legislature has imposed both a civil and a criminal sanction for the same act does not transform the civil penalty into a criminal penalty, particularly when the penalties are in different parts of a statute or are in separate statutes. *Ward*, 448 U.S. at 250, 100 S.Ct. at 2642. Therefore, the fact that the same infractions are criminal offenses under state law does not transform these civil penalties into criminal penalties.

This court takes appellants' second assertion as a claim that there is no alternative purpose to which the sanction can be rationally connected. The appellees, while conceding that deterrence is one aim, assert that "the other reason for the imposition of civil penalties for violations of parking regulations is to defray the cost of providing and regulating parking on city streets...." The district court found that the fines are civil sanctions which are imposed in the context of a comprehensive regulatory scheme. We agree with the district court's conclusion

15

(5:06 CV 139)
(5:06 CV 154)

>that the fines are part of a comprehensive regulatory scheme and are not punitive in nature.
>
>Accordingly, we conclude that the district court was correct in its determination that the appellants have not offered the "clearest proof" that the fines here in question are punitive in purpose or effect so as to negate the intention of the City of Columbus that all such fines be civil penalties.

Gardner, 841 F.2d at 1277-1278.

At this point in the proceedings, the court is reluctant to rule on the motion for judgment on the pleadings. First, the stipulation does not indicate the amount of the civil penalty. The court is of the view that the amount of the civil penalty may bear on the analysis required by Supreme Court precedent.[4]

The Court does not perceive any exceptions to the enforcement of the Akron Ordinance with respect to the owner of the offending vehicle. In that context, the Court has concerns about the imposition of the civil penalties if the vehicle is owned by a governmental agency, be it the City of Akron, the State of Ohio or the United States Government or a vehicle owned by a car rental company such as Hertz or Avis, or a vehicle that is the subject of a short-term or long-term lease. Does the City have a policy with respect to such an offending vehicle?[5] Does the City

---

[4]An article in the May 14 edition of the Cleveland Plain Dealer (Appendix I) commenting on an apparently similar procedure now in place in the City of Cleveland appears to lead to the conclusion that the use of civil penalties for traffic violations captured on camera in Cleveland has become a major source of revenue to the City of Cleveland. According to the article, the City of Cleveland projects $6 million in revenue for the year 2006. How that apparent fact or a similar conclusion with respect to the City of Akron bears on the analysis of the *Mendoza-Martinez* standard remains to be considered.

[5]Akron Ordinance Section 79.01(c)(3)(a) states that the lessor of a vehicle may submit an affidavit to contest liability if there is a lease of more than six months. The ordinance does not
(continued...)

(5:06 CV 139)
(5:06 CV 154)

have any records that demonstrate violations by vehicles owned by a governmental agency, a car rental agency, or leased on either a short-term of long-term basis?[6]

The Court will delay any decision on the due process issue until the plaintiffs have the opportunity to engage in discovery on those issues or any other issues deemed relevant by the plaintiffs. The Court thus opens discovery for a sixty day period through August 18, 2006. The Court will conduct a status conference on August 29, 2006, at noon for the purpose of making certain that no other issues remain open for the Court's consideration.

## VI. Conclusion

The motion of the plaintiff Mendenhall to remand (Document No. 10) is DENIED. The Court finds no basis for abstention and will continue with resolution of the merits of the cases. The Court finds that the adoption of Akron City Ordinance 461-2005 is a proper exercise of the powers bestowed on the City of Akron by Article XVIII, Section 3 of the Ohio Constitution.

---

[5](...continued)
state what, if any, consequences may attach to the lessee of the vehicle.

[6]The Court recognizes that the plaintiffs have not asserted an equal protection argument. However, the court anticipates that an appeal shall follow regardless of this court's ruling and it is entirely possible that a higher court might hold *sua sponte* that an equal protection claim should also be considered with respect to the issues raised by the increasing use of cameras to record traffic violations, but with the imposition of civil penalties. Hence the court's concerns about the city's policy when the offending vehicle is owned by a governmental agency, a car rental agency or is subject to either a long-term or short-term lease. In the event the plaintiffs wish to amend their complaints to add an equal protection claim, said amended complaints must be filed by August 4, 2006.

17

(5:06 CV 139)
(5:06 CV 154)

  The Court defers a ruling on the alleged due process violations in the enforcement of Ordinance 461-2005 until the plaintiffs have the opportunity for discovery which is open and shall be completed by August 18, 2006.

  IT IS SO ORDERED.


|  May 17, 2006 |  */s/ David D. Dowd, Jr.* |
|---|---|
| Date | David D. Dowd, Jr. |
| | U.S. District Judge |