UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Kelly Mendenhall, | ) | |
| Plaintiff, | ) | CASE NO. 5:06 CV 0139 |
| | ) | (Case 1) |
| v. | ) | |
| | ) | |
| The City of Akron, et al., | ) | |
| Defendants. | ) | |
| ------------------------------------------------------ | ) | -------------------------------------------- |
| | ) | |
| Janice A. Sipe, et al., | ) | CASE NO. 5:06 CV 0154 |
| Plaintiffs, | ) | (Case 2) |
| | ) | |
| v. | ) | |
| | ) | |
| Nestor Traffic Systems, Inc., et al., | ) | |
| Defendant(s). | ) | |
| | ) | |

ORDER OF CERTIFICATION

Pursuant to Ohio Supreme Court Rule of Practice XVIII, the undersigned District Judge

of the United States District Court for the Northern District of Ohio, Eastern Division, hereby

certifies a question of state law to the Ohio Supreme Court.

No controlling precedent of the Ohio Supreme Court answers this question, which is

potentially dispositive of the two above-captioned cases.

**Pursuant to Rule XVIII, § 2(A)**, the names of the cases are stated in the caption above.

**Pursuant to Rule XVIII, § 2(B)**, the nature of the cases, the circumstances from
which the question of law arises, the question of law to be answered, and any
other information the certifying court considers relevant to the question of law to
be answered are:

(5:06 CV 0139; 5:06 CV 0154)

## Nature of the Cases

These two cases are attacks by the plaintiffs on Akron Ordinance 481-2005, codified at Akron Municipal Code § 79.01, which authorizes implementation of an automated mobile speed enforcement system (using cameras in mobile units to identify violators) and assesses civil penalties for speeding violations in school zones.

Both suits are against the City of Akron and Nestor Traffic Systems, Inc. (a Rhode Island Corporation which has contracted to provide equipment, personnel, and services in connection with the installation, operation and maintenance of the system) by individuals on behalf of themselves and purported classes of similarly situated individuals who have all been assessed civil penalties under this system because vehicles registered in their names have allegedly exceeded the speed limit in school zones, as detected by the cameras.  Plaintiffs assert that the City Ordinance converts speeding from a criminal to a civil violation akin to a parking ticket, thereby depriving citizens of the protections afforded in criminal proceedings.

## Circumstances From Which the Question of Law Arises

In a Memorandum Opinion filed on May 17, 2006, the undersigned ruled in these two cases that the City of Akron has the power under Home Rule to adopt legislation calling for civil penalties for speeding violations detected by the Automated Mobile Speed Enforcement System because the challenged ordinance "neither permits or licenses that which the laws of the Ohio General Assembly either forbid or prohibit and vice versa."  The undersigned concluded that

2

(5:06 CV 0139; 5:06 CV 0154)

"Akron City Ordinance 461-2005 is a proper exercise of the powers bestowed on the City of Akron by Article XVIII, Section 3 of the Ohio Constitution." [1]

The undersigned has now been made aware of a contrary opinion by at least one Ohio court which has held that a similar municipal ordinance violates the Ohio Constitution.  In Daniel Moadus, Jr., et al. v. City of Girard, et al., Case No. 05-CV-1927, the Court of Common Pleas of Trumbull County held that Girard Ordinance No. 7404-05, which created a civil enforcement system for speeding violations within the City utilizing a camera and radar device, violated Article XVIII, Section 3 of the Ohio Constitution because it "transform[ed] what the State has defined as criminal conduct into merely a civil wrong."  In so ruling, the Court of Common Pleas expressly rejected the undersigned's prior ruling, which relied on Gardner v. City of Columbus, 841 F.2d 1272 (6th Cir. 1988) (a case involving civil penalties for parking violations), that there was no Ohio Constitutional violation.  The Common Pleas Judge concluded that the statutory scheme in O.R.C. Chapter 4521, upon which Gardner relied, has never been extended from parking tickets to speeding.  The Court of Common Pleas ordered the City of Girard to "cease and desist in using cameras for enforcement of speeding laws unless done so under the general criminal laws of Ohio" and further ordered the City "to not attempt collection of any fines claimed by said city under the 'civil' ordinance drafted by said city."

The undersigned believes that a related original action in mandamus has been filed.  See State of Ohio ex rel. Michael A. Bernard, Girard Municipal Court Judge v. James J. Melfi,

_____

[1]  This May 17 ruling was interlocutory and, as such, was not a final appealable order.  The undersigned has now, by separate order, vacated that ruling believing it may have been in error.  See Case 1, Doc. No. 58; Case 2, Doc. No. 44.

3

(5:06 CV 0139; 5:06 CV 0154)

<u>Mayor of Girard, City of Girard City Council, Sam Zirafi, Girard Auditor, and John Moliterno,</u>

<u>Girard Treasurer</u>, Case No. 2006-2157 (filed November 21, 2006).

The undersigned does not have access to the documents filed in the mandamus action;

however, since it is highly probable that the question raised herein for certification may be

addressed in the mandamus action, the undersigned is of the view that it should defer to the

action of the Ohio Supreme Court.

The undersigned also takes note of the fact that there are similar lawsuits in different

cities which have challenged automated traffic enforcement systems and which are in various

stages of their respective proceedings.  <u>See, e.g.</u>, <u>Michael McNamara v. City of Cleveland, et al.</u>,

No. 06-582364 (Cuyahoga County, filed Jan. 20, 2006); <u>Ann Lewicki v. City of Toledo, et al.</u>,

No. G-4801-CI-200604524 (Lucas County, filed July 13, 2006);  <u>April Stern v. City of</u>

<u>Steubenville, et al.</u>, No. 05CV524 (Jefferson County, filed Nov. 23, 2005).  In the <u>Stern</u> case,

Common Pleas Judge David Henderson invalidated all speeding tickets issued under

Steubenville's ordinance because the defendants had failed to comply with the mandatory notice

requirements in the ordinance.  The judge declined to rule on the constitutionality of the

ordinance.[2]

---

[2] It does not appear that this ruling was ever appealed.  However, a second lawsuit has
been filed by the Steubenville Bakery and Louis Tripodi against the City of Steubenville
challenging the constitutionality of the ordinance and claiming loss of business.  <u>See</u>
http://www.wtov9.com/ news/9418939/detail.html.

(5:06 CV 0139; 5:06 CV 0154)

Finally, the undersigned notes that a bill has been introduced in the Ohio legislature

which would establish conditions for the use of photo-monitoring devices such as the one at issue

in these two cases.  See Sub. H.B. 56 (2005).

In view of all of the above, the undersigned believes that the question certified below is a

matter peculiarly within the province of the State courts.

## Question of Law to be Answered

Question:

Whether a municipality has the power under home rule to enact civil penalties for
the offense of violating a traffic signal light or for the offense of speeding, both of
which are criminal offenses under the Ohio Revised Code.

## Other Information Relevant to the Question of Law to be Answered

The parties to these two actions have filed two sets of jointly stipulated facts.  Since these

fact stipulations shed some light on the issues, they are incorporated herein in their entirety to

assist the Ohio Supreme Court.

The first twenty fact stipulations, set forth below, apply to both cases:

1.  After a hit and run accident resulting in the death of a child in a school cross
walk, the Akron City Council passed Ordinance 461-2005 enacting Chapter 79
"Automated Mobile Speed Enforcement System" and Section 79.01 entitled
"Civil Penalties for Automated Mobile Speed Enforcement System Violations" on
September 12, 2005.  Said ordinance having been approved and signed by the
Mayor of the City of Akron on September 19, 2005.

2.  The stated purpose of the legislation was that "it is desirable to reduce the
danger from vehicle operators speeding in and around school zones;" and because
"frequent incidents of speeding create a substantial risk to the safety of children in

5

(5:06 CV 0139; 5:06 CV 0154)

school zones and crosswalks;" and "an automated mobile speed enforcement system will assist the Akron Police Department by alleviating the need for conducting extensive conventional traffic enforcement in and around school zones."

3.  The City of Akron and Nestor Traffic Systems, Inc. entered into a contract on October 6, 2005, wherein Nestor Traffic Systems, Inc. would install and assist the municipality in the administration and operation of a mobile speed violation detection system within the City of Akron.

4.  The Akron ordinance provides for civil enforcement imposing monetary liability upon the owner of a vehicle for the vehicle's failure to comply with the posted speed limits in school zones and streets or highways within the City of Akron including crosswalks used by children going to or leaving school during recess and opening and closing hours.

5.  The criminal justice system is not involved, the offender is not issued a criminal traffic citation by a police officer, the offender is not summoned to the traffic court in the Akron Municipal Court, nor are points assessed against the driver or owner's driving record by the Bureau of Motor Vehicles.

6.  The Akron Ordinance, Section 79.01 entitled "Civil Penalties for Automated Mobile Speed Enforcement System Violations" did not change the speed limits set by the State of Ohio.

7.  If a vehicle's rate of speed exceeds the posted speed limit, the owner of the vehicle is issued a "notice of liability."  The notice includes photographs of the vehicle, the vehicle's license plate, the date, time, and location of the violation, the posted speed, the vehicle speed, and the amount of the civil penalty.

8.  The violation is assigned a civil violation number and a notice of liability is issued to the owner of the vehicle via regular U.S. Mail.  Also included is a remittance form stating the amount of the civil penalty and the address where the check or money order is to be mailed.  The form also explains that the owner has three options:  1) to pay the amount due; 2) to sign an affidavit that the cited vehicle is leased or stolen; or 3) to exercise the right to an administrative appeal.

9.  If the owner of the vehicle wishes to have an administrative appeal pursuant to Section 79.01(F) of the Code of Ordinances of the City of Akron, the owner is instructed to complete and mail the notice of appeal section of the violation form within 21 days of the date listed on the civil citation.

(5:06 CV 0139; 5:06 CV 0154)

10.  The photographs of the vehicle and license plate are reviewed by technicians of Nestor Traffic Systems, Inc. for purposes of clarity and to make certain the automobile in the photograph is the same as the automobile registered to that license plate.

11.  The photographs of the civil violation are also reviewed by a member of the Akron Police Department for clarity and to make certain that the automobile is the same as the automobile registered to that license plate.

12.  If the vehicle and the license plate do not match, the civil violation is dismissed.

13.  The ordinance provides that the Mayor of the City of Akron shall appoint a hearing officer as an independent third party to hear administrative appeals through an administrative process established by the City of Akron.  On December 7, 2005, the Mayor appointed Pam Williams to hear the administrative appeals.

14.  Pursuant to the ordinance, failure to give notice of appeal or failure to pay the civil penalty within 21 days constitutes a waiver of the right to contest the citation and is considered an admission of a violation of the ordinance.

15.  If the civil penalty is not paid, the City must institute a separate civil action to collect the debt.

16.  he vehicle owner is the person or entity identified by the Ohio Bureau of Motor Vehicles as the registered owner of the vehicle and is civilly liable for the penalty imposed for excessive speed.  By the terms of the Ordinance, the owner of a vehicle shall not be responsible for the civil penalty if within 21 days from the date listed on the notice of liability the owner signs an affidavit stating the name and address of the person or entity who leased the vehicle in a lease of 6 months or more, or if the owner produces a law enforcement incident report from a state or local law enforcement agency or record bureau stating that the vehicle involved was reported stolen before the time of the violation.

17.  If the vehicle owner requests an administrative appeal by mailing in the request for an administrative hearing, they are notified of a hearing date before the administrative hearing officer.

18.  The following explains the administrative hearing process:
> • the independent hearing officer tape records the entire proceeding to preserve the record;

7

(5:06 CV 0139; 5:06 CV 0154)

> • an Akron Police officer is present to verify the information provided;
> • the hearing officer explains the appeal process, indicating that the hearing is civil not a criminal or traffic trial and explains that there will be no traffic record or points on the driver's license, that the hearing officer's responsibility is to determine whether she can clearly identify the vehicle, license plate and to whom the license plate is issued, that she will determine whether a preponderance of the evidence establishes if a violation of Section 79.01 of the Codified Ordinances of City of Akron occurred and if the owner is liable;
> • the computer generated recorded images of the vehicles, license plates of the vehicles, ownership of the vehicles, the date and speed of the vehicles are admissible in the administrative appeal process, are available for review by the appealing party, and are considered prima facie proof of the civil violation;
> • any witness wishing to testify is sworn in by the hearing officer.

19.  If the independent hearing officer sustains the appeal, the civil citation is dismissed and no civil penalty is assessed.

20.  If the independent hearing officer denies the appeal, the civil fine is assessed.

The following agreed stipulations, Nos. 21 through 49, apply only to Case 1:

21.  On November 2005, Plaintiff Kelly Mendenhall, resident of the City of Akron, Ohio, received an automated mobile speed enforcement citation for going 39 mph in a 25 mph speed zone on Copley Road in the City of Akron, Ohio near Erie Island Elementary School.

22.  Plaintiff Mendenhall exercised her right to request an administrative hearing and appeared before the independent hearing officer with counsel, her husband, Attorney Warner Mendenhall.

23.  Plaintiff Mendenhall's administrative appeal was sustained by the independent hearing officer based upon facts that in early November 2005, and on the date she received the civil speeding citation, the 25 mph speed sign was either vandalized or missing for east bound traffic and her civil speeding citation was dismissed.  No civil penalty was assessed and the citation was dismissed.

8

(5:06 CV 0139; 5:06 CV 0154)

24.  On December 13, 2005, Plaintiff Mendenhall filed a complaint and class action for declaratory judgment, injunctive relieve and for a money judgment against City of Akron and all of its City Council Members in their official capacity and Nestor Traffic Systems, Inc. of Providence, Rhode Island.

25.  Defendant City of Akron and Nestor Traffic Systems, Inc. removed the case to the United States District Court for the Northern District of Ohio, Eastern Division.

26.  Plaintiff subsequently dismissed the City Council Members.

27.  Plaintiff Mendenhall claims the Akron ordinance is invalid.  She claims it is in violation of her due process rights guaranteed by the Ohio and United States Constitutions; that the Akron ordinance violates Article XVIII Section 3 of the Ohio Constitution commonly referred to as the Home Rule Amendment in that she alleges Ohio Revised Code Section 4511.07 is a general law of the laws of the State of Ohio and that the Akron ordinance is in conflict therewith; that the Akron ordinance violates public policy of the State of Ohio regarding due process by implication of a conflict with Revised Code Sections 4521.02 through 4532.08; and that the Akron ordinance forces individuals challenging citations to waive their rights under the Fifth Amendment to the United States Constitution in order to defend themselves.

28.  The City of Akron is a Charter municipality pursuant to Section 7 of Article XVIII of the Ohio Constitution.

29.  Nestor contracts nationwide with government entities, referred to as "customers," to provide Automatic Traffic Enforcement Services ("Services"). These Services are intended to document speeding vehicles.

30.  Nestor sets up its technology in areas designated by the customer and collects data, identifying potential cars speeding.  Within Nestor, the potential speeding violation is referred to as an "event."

31.  Nestor has its own internal coding and computer terminology which it uses to organize its data.  Though necessary to organize data for a customer, the actual terminology is not necessarily customer driven.

32.  Some of Nestor's other customers, however, specifically indicate that Nestor should not process certain categories of vehicles.  For instance, some customers do not want Nestor to process emergency vehicles, funeral processions, or vehicles photographed where an officer is directing traffic.  Nestor's computer

9

(5:06 CV 0139; 5:06 CV 0154)

language refers to these vehicles as "exempt."  Thus, when an "exempt" vehicle is documented as an event, it is categorized in Nestor's computer system as a "discretionary discard" and Nestor does not process the event.

33.  On October 6, 2005, Nestor and the City entered into a pilot program, a fixed term contract for the provision of Services designed to detect mobile speed violations within the City.  The pilot program remained in effect through June 8, 2005.

34. Under the pilot program contract, Nestor "processed" events for the City by submitting the vehicle license plate information to the Bureau of Motor Vehicles ("BMV").

35.  Some events, however, cannot be submitted to the BMV because of technical issues, for instance, the vehicle image is obstructed or blurry, the scene image is insufficiently illuminated or otherwise unclear, or there are multiple vehicles in one image.  These events are "discarded."

36.  After receiving the vehicle registration information from the BMV, Nestor verifies that the information is accurate by comparing the registration information against the actual photograph.  If the information does not match, for instance, the event photograph depicts a 2002 Subaru Forester yet the registration information indicates that the registered vehicle is a 2003 Audi A4, Nestor will make sure that the vehicle plate information was correctly typed and will resubmit the request for information to the BMV.

37.  The vehicle registration information received from the BMV is forwarded to the Akron Police Department where a police officer reviews the information and issues the citation by directing Nestor to mail the civil violation notice.

38.  During the pilot program, Nestor documented 17,163 events.  Some of these events were "discarded" because there was no violation, i.e. the vehicle was not speeding, Nestor was testing its system, or Nestor was unable to determine whether an actual violation occurred.  The remaining 15,766 events were submitted to the BMV.  Of those events, 11,740 citations were issued by the City.

39.  There were 4,035 violations that were not issued citations.  Nestor's internal software categorized the non-issued citations into the following three categories:

      a. The first category, is termed "discretionary" by Nestor's computer system.  Nestor discarded events under this category in instances where the vehicle registration information was "not in

(5:06 CV 0139; 5:06 CV 0154)

file" with the BMV and the BMV did not return vehicle registration information to Nestor.  This category was also used when Nestor was unable to obtain registration information for out-of-state vehicles.  Although some states release vehicle registration information to Nestor, other states do not.  There were a total of 72 "discretionary" discards:  59 were out-of-state vehicles; 11 were "not in file," which were either vehicles with a government plate, or an ambulance, fire/rescue or police cruiser; and 2 resulted from system testing.  The BMV did, however, return information on one school bus, and other vehicles registered to public entities such as the University of Akron, the Akron Metropolitan Housing Authority, and the Akron Zoo.  All of these public vehicles were issued citations and paid the civil violations.

b.  The second category, termed "uncontrollable" by Nestor's computer system, totaled 2,288.  Citations were not issued for these vehicles because of an obstruction in the photograph of the vehicle or license plate.

c.  The third category, termed "controllable" by Nestor's computer system, totaled 1,666.  Citations were not issued for these vehicles because of technical problems with the Nestor software, for instance, the Nestor camera was out of focus, the lighting was insufficient to secure an image, or the vehicle framing was improper, i.e. there was only a portion of the vehicle in the image.

40.  The "discretionary discards" were not the result of any direction by the City of Akron.  To the contrary, Lieutenant Hanley and Sergeant Garro, of the Akron Police Department, instructed Nestor to process all events without exception. The box "Current Status" uses the term "Discarded" to mean a citation was not issued. The box "Disposition Reason" uses the computer term "Exempt Vehicle." An exempt vehicle does not mean the City of Akron instructed Nestor to exclude any class of vehicle. The City's instruction was that all vehicles are to be treated the same and there were to be no exceptions.  The use of the term "exempt vehicle" to describe the reason for a discretionary discard is Nestor's computer language that is used when the event was not forwarded by Nestor to the City because the Ohio BMV reported to Nestor that the vehicle was "not in file," or vehicle registration information was not available from another state, or an event was the result of system testing, or if it was a discretionary discard by the reviewing police officer as described in the example in paragraph #42 below.

11

(5:06 CV 0139; 5:06 CV 0154)

41.  There were no exceptions for Nestor to process all events and forward whatever information they received from the BMV to the Akron Police Department.  After the first review by Nestor, the Akron Police review the BMV registration information prior to authorizing the issuance of the citation.  The police review requires the exercise of discretion in certain cases.  For example, see NTS 0066 – "Citation Discarded by dgarro REASON: Exempt Vehicle – 21 March 2006."  In that instance, the event was processed by Nestor and the registration information was sent by the BMV indicating that the van was registered to American Medical Response, a private non-government ambulance service. Sergeant Garro, in reviewing the information and photo, could not discern whether or not the ambulance was on an emergency call and used his discretion not to issue the citation.  This would be similar to a police officer in a cruiser stopping a motorist, and for good reason, using his or her discretion to issue a warning and not a citation.  Although Nestor's computer language refers to the status as "Discarded" and the reason as "Exempt Vehicle" (as is done with "not in file" government vehicles) this was actually a discretionary non-citation by the reviewing police sergeant.

42.  As indicated in Agreed Stipulation [39(a)], in some instances, "discretionary discards" occurred because Nestor was unable to obtain the registration information from the BMV.  In fact, the BMV is prohibited by the federal Driver's Privacy Protection Act from disclosing information about certain government and police vehicles.  Nestor only receives vehicle registration information from the BMV that the BMV is permitted to disclose.  When Nestor submitted a request for information to the BMV for government vehicles, the BMV would return the requested information to Nestor with a notation that the vehicle registration information was "not in file."  These violations were therefore termed "discretionary discards" by Nestor in the "Current Status" box and as "Exempt Vehicle" in the "Disposition Reason" box. They were discarded by Nestor and not forwarded to the Akron Police Department for review.  When Nestor was told by the BMV that a vehicle was "not in file," Nestor had no registration information to forward to the City.  The City was unaware of the "discretionary discards" until discovery commenced in this lawsuit.

43.  Nestor processed and the City of Akron issued citations for all vehicles that were owned by rental car companies provided there was a clear picture of the vehicle and license plate, and provided the registration information was returned by the BMV.  For instance, citations were issued and violations were paid by the following companies:  a rental car company, "U Save It Auto Rental," located at 449 West Avenue, Tallmadge, Ohio;  a car leasing company, "Car Lease, Inc.," located at 650 Holmes Ave., Akron, Ohio; a truck leasing company "Penske Truck Leasing, Co.," located at 3000 Fortuna Drive, Akron, Ohio; Enterprise

12

(5:06 CV 0139; 5:06 CV 0154)

Capital (which may be Enterprise rental company); and a Ford dealership (which also may be a rental car).  There were certainly other citations issued for rental vehicles but each of the 11,740 citations have not been reviewed for this disclosure.  Other paid citations include the Boy Scouts of America, towing companies that contract with the City of Akron, United Disability, Waikem Motors (likely a lease), several Yellow Cabs, and the Visiting Nurse Service.

44.  On August 16, 2006, Nestor and the City agreed to a letter of intent to enter into a new contract for the provision of Services.  The Services will continue to focus on school zone speeding violations; Services under the new agreement began on August 30, 2006, coinciding with the commencement of the City of Akron's 2006-2007 school year.

45.  Nestor and the City are in the process of finalizing the new contract, the written Policies and Procedures ("P&P"), and implementing the Services for the new contract.  Under the new agreement, there are no exempt vehicles.

46.  Under the pilot program contract, from October 28, 2005 through December 12, 2005, the amount of the civil violation was originally $150.00 for vehicles exceeding the posted speed within 15 miles per hour, and $250.00 for vehicles exceeding the posted speed by 15 or more miles per hour.  On December 12, 2005, the civil violation for the pilot program was changed to $35.00.  The vehicle owners that were cited and paid prior to December 12, 2005 at the higher amounts each received a refund of all amounts paid in excess of $35.00.

47.  Under the pilot program contract, the City deposited $418,960.02 in civil violations (having subtracted $1,860 in NSF checks).  From that amount, the City refunded $122,872 to violators, and paid Nestor $188,399. The balance remaining with the City was $107,689.02. (These figures include all pilot program payments with the exception of one Nestor invoice for August not yet received and paid in the approximate amount of $1,300.)

48.  Under the new agreement, during the first two weeks of the school year (August 30, 2006 through September 12, 2006), the civil violation remained at the lower level of $35.00 as a warning period.  Civil violations occurring on or after September 13, 2006 are $100.00 from which Nestor will be paid $19 per paid citation.

49.  The City has not yet instituted collection proceedings to recover any of the unpaid civil violations.

(5:06 CV 0139; 5:06 CV 0154)

The following agreed stipulations, Nos. 21a through 49a and 50 through 56, apply only to

Case 2:

21a.  It is the position of the Defendants that the right to appeal the decision of the independent hearing officer's decision to the Court of Common Pleas is governed by Chapter 2506 of the Ohio Revised Code. It is the position of the Plaintiffs that the right to appeal the decision of the independent hearing officer's decision to the Court of Common Pleas is not governed by Chapter 2506 of the Ohio Revised Code.

22a.  Ohio Revised Code Chapter 2506:  "Appeals From Orders Of Administrative Officers and Agencies" is the chapter of the Ohio Revised Code establishing the right to appeal every final order, adjudication, or decision of any officer, tribunal, authority, board, bureau, commission, department or other decision of any political subdivision of the state to be reviewed by the Court of Common Pleas of the county in which the principal office of political subdivision is located.

23a.  [Not used]

24a.  On November 18, 2005, Plaintiff Janice A. Sipe was issued a civil speeding violation for going 45 mph in a 35 mph zone on Newton Street.

25a.  On November 4, 2005, Plaintiff Joanne L. Lattur was issued a civil speeding violation for going 30 mph in a 20 mph school zone on Fouse Street in the City of Akron, Ohio.

26a.  On October 31, 2005, Plaintiff Wayne H. Burger was issued two civil speeding violations twenty minutes apart for going 29 mph in a 20 mph school zone and for going 31 mph in the same 20 mph school zone on Fouse Street in the City of Akron, Ohio.

27a.  Plaintiff Janice A. Sipe did not exercise her right to request an administrative hearing within 21 days nor has she requested an administrative hearing at any time from the date of her civil citation to present nor has she paid the assessed civil fine.

28a.  Plaintiff Joanne L. Lattur did not exercise her right to request an administrative hearing within 21 days nor has she requested an administrative hearing at any time from the date of her civil citation to present nor has she paid the assessed civil fine.

14

(5:06 CV 0139; 5:06 CV 0154)

29a.  Plaintiff Wayne H. Burger exercised his right to request an administrative hearing on one of his violations. An administrative hearing was scheduled on December 29, 2005, and Plaintiff Wayne H. Burger was notified of the administrative hearing date, however, he failed to appear at the administrative hearing. Plaintiff Wayne H. Burger made no contact with the City of Akron, the Akron Police Department, or Nestor Traffic Systems, Inc. before or after the December 29, 2005 hearing date to reschedule the matter or request a new hearing date.  The independent hearing officer denied the appeal based on his failure to appear at the hearing.  Plaintiff Burger has not paid his assessed civil penalty for that violation. The City of Akron dismissed Burger's second violation as it did others who received two tickets in the same day at the beginning of the program.

30a.  On December 9, 2005, Plaintiffs Sipe, Lattur and Burger filed an action in Summit County Common Pleas Court entitled "Class Action Complaint Verified For Injunctive Relief" naming as Defendants Nestor Traffic Systems, Inc. of Providence, Rhode Island, four officers of Nestor Traffic Systems, Inc. named individually, the City of Akron, Ohio and ten unnamed John Does.  Plaintiffs requested that the Clerk of Courts withhold service on the Complaint.

31a.  On December 12, 2005, Plaintiffs Sipe, Lattur, and Burger filed their First Amended Complaint.  Said Complaint was served on the City of Akron on December 30, 2005, and served on Nestor Traffic Systems, Inc. on January 3, 2006.  On December 13, 2005, Plaintiffs Sipe, Lattur, and Burger filed a Motion for Temporary Restraining Order and a Motion for Preliminary Injunction but they have not attempted service on any of the Defendants nor have the Defendants ever been served with these Motions.  Defendants obtained a copy of the Motions from the Summit County Common Pleas Court website.

32a.  On December 16, 2005, Plaintiffs Sipe, Lattur, and Burger filed a Second Amended Complaint, which has never been served upon any of the Defendants. Defendants obtained a copy of the Second Amended Complaint from the Summit County Common Pleas Court website.

33a.  Defendants City of Akron and Nestor Traffic Systems, Inc. removed the case to the United States District Court for the Northern District of Ohio Eastern Division.  The case was originally assigned to Judge James S. Gwinn [sic] and subsequently transferred to the docket of Judge David D. Dowd, Jr. pursuant to Local Rule 3.1(b)(3).

34a.  Plaintiffs Sipe, Lattur, and Burger filed an eleven count, 121 paragraph Complaint alleging as follows:  Count I – Fraud, Count II – Civil Conspiracy, Count III Common Plan/Design to Commit Fraud, Count IV – Negligence, Count

(5:06 CV 0139; 5:06 CV 0154)

V – Negligence Per Se, Count VI – Consumer Sales Practices Act, Count VII –
Negligence/Nuisance, Count VIII – Conversion, Count IX – Invasion of Privacy,
Count X – Injunctive Relief, Count XI – 42 U.S.C. Sections 1983 and 1988, and
the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States
Constitution/Abuse of Process.

35a.  The City of Akron is a Charter municipality pursuant to Section 7 of Article
XVIII of the Ohio Constitution in that Akron having established a Charter form of
government may adopt an amended a Charter for its government and subject to
the provisions of Section 3 of Article XVIII of the Ohio Constitution may exercise
under the Charter all powers of local self government.

36a.  Nestor contracts nationwide with government entities, referred to as
"customers," to provide Automatic Traffic Enforcement Services ("Services").
These Services are intended to document speeding vehicles.

37a.  Nestor sets up its technology in areas designated by the customer and
collects data, identifying potential cars speeding.  Within Nestor, the potential
speeding violation is referred to as an "event."

38a.  Nestor has its own internal coding and computer terminology which it uses
to organize its data.  Though necessary to organize data for a customer, the actual
terminology is not necessarily customer driven.

39a.  Some of Nestor's other customers, however, specifically indicate that Nestor
should not process certain categories of vehicles.  For instance, some customers
do not want Nestor to process emergency vehicles, funeral processions, or
vehicles photographed where an officer is directing traffic.  Nestor's computer
language refers to these vehicles as "exempt."  Thus, when an "exempt" vehicle is
documented as an event, it is categorized in Nestor's computer system as a
"discretionary discard" and Nestor does not process the event.

40a.  On October 6, 2005, Nestor and the City entered into a pilot program, a
fixed term contract for the provision of Services designed to detect mobile speed
violations within the City.  The pilot program remained in effect through June 8,
2005.

41a.  Under the pilot program contract, Nestor "processed" events for the City by
submitting the vehicle license plate information to the Bureau of Motor Vehicles
("BMV").

16

(5:06 CV 0139; 5:06 CV 0154)

42a.  Some events, however, cannot be submitted to the BMV because of technical issues, for instance, the vehicle image is obstructed or blurry, the scene image is insufficiently illuminated or otherwise unclear, or there are multiple vehicles in one image.  These events are "discarded."

43a.  After receiving the vehicle registration information from the BMV, Nestor verifies that the information is accurate by comparing the registration information against the actual photograph.  If the information does not match, for instance, the event photograph depicts a 2002 Subaru Forester yet the registration information indicates that the registered vehicle is a 2003 Audi A4, Nestor will make sure that the vehicle plate information was correctly typed and will resubmit the request for information to the BMV.

44a.  The vehicle registration information received from the BMV is forwarded to the Akron Police Department where a police officer reviews the information and issues the citation by directing Nestor to mail the civil violation notice.

45a.  During the pilot program, Nestor documented 17,163 events.  Some of these events were "discarded" because there was no violation, i.e. the vehicle was not speeding, Nestor was testing its system, or Nestor was unable to determine whether an actual violation occurred.  The remaining 15,766 events were submitted to the BMV.  Of those events, 11,740 citations were issued by the City.

46a.  There were 4,035 violations that were not issued citations.  Nestor's internal software categorized the non-issued citations into the following three categories:

a.  The first category, is termed "discretionary" by Nestor's computer system.  Nestor discarded events under this category in instances where the vehicle registration information was "not in file" with the BMV and the BMV did not return vehicle registration information to Nestor.  This category was also used when Nestor was unable to obtain registration information for out-of-state vehicles.  Although some states release vehicle registration information to Nestor, other states do not.  There were a total of 72 "discretionary" discards:  59 were out-of-state vehicles; 11 were "not in file," which were either vehicles with a government plate, or an ambulance, fire/rescue or police cruiser; and 2 resulted from system testing.  The BMV did, however, return information on one school bus, and other vehicles registered to public entities such as the University of Akron, the Akron Metropolitan Housing Authority, and the Akron Zoo.  All of these public vehicles were issued citations and paid the civil violations.

17

(5:06 CV 0139; 5:06 CV 0154)

        b.  The second category, termed "uncontrollable" by Nestor's computer system, totaled 2,288.  Citations were not issued for these vehicles because of an obstruction in the photograph of the vehicle or license plate.

        c.  The third category, termed "controllable" by Nestor's computer system, totaled 1,666.  Citations were not issued for these vehicles because of technical problems with the Nestor software, for instance, the Nestor camera was out of focus, the lighting was insufficient to secure an image, or the vehicle framing was improper, i.e. there was only a portion of the vehicle in the image.

47a.  The "discretionary discards" were not the result of any direction by the City of Akron.  To the contrary, Lieutenant Hanley and Sergeant Garro, of the Akron Police Department, instructed Nestor to process all events without exception. The box "Current Status" uses the term "Discarded" to mean a citation was not issued. The box "Disposition Reason" uses the computer term "Exempt Vehicle." An exempt vehicle does not mean the City of Akron instructed Nestor to exclude any class of vehicle. The City's instruction was that all vehicles are to be treated the same and there were to be no exceptions.  The use of the term "exempt vehicle" to describe the reason for a discretionary discard is Nestor's computer language that is used when the event was not forwarded by Nestor to the City because the Ohio BMV reported to Nestor that the vehicle was "not in file," or vehicle registration information was not available from another state, or an event was the result of system testing, or if it was a discretionary discard by the reviewing police officer as described in the example in paragraph #[49a] below.

48a.  There were no exceptions for Nestor to process all events and forward whatever information they received from the BMV to the Akron Police Department.  After the first review by Nestor, the Akron Police review the BMV registration information prior to authorizing the issuance of the citation.  The police review requires the exercise of discretion in certain cases.  For example, see NTS 0066 – "Citation Discarded by dgarro REASON: Exempt Vehicle – 21 March 2006."  In that instance, the event was processed by Nestor and the registration information was sent by the BMV indicating that the van was registered to American Medical Response, a private non-government ambulance service. Sergeant Garro, in reviewing the information and photo, could not discern whether or not the ambulance was on an emergency call and used his discretion not to issue the citation.  This would be similar to a police officer in a cruiser stopping a motorist, and for good reason, using his or her discretion to issue a warning and not a citation.  Although Nestor's computer language refers to the status as "Discarded" and the reason as "Exempt Vehicle" (as is done with "not in

18

(5:06 CV 0139; 5:06 CV 0154)

file" government vehicles) this was actually a discretionary non-citation by the reviewing police sergeant.

49a.  As indicated in Agreed Stipulation [46a(a)], in some instances, "discretionary discards" occurred because Nestor was unable to obtain the registration information from the BMV.  In fact, the BMV is prohibited by the federal Driver's Privacy Protection Act from disclosing information about certain government and police vehicles.  Nestor only receives vehicle registration information from the BMV that the BMV is permitted to disclose.  When Nestor submitted a request for information to the BMV for government vehicles, the BMV would return the requested information to Nestor with a notation that the vehicle registration information was "not in file."  These violations were therefore termed "discretionary discards" by Nestor in the "Current Status" box and as "Exempt Vehicle" in the "Disposition Reason" box. They were discarded by Nestor and not forwarded to the Akron Police Department for review.  When Nestor was told by the BMV that a vehicle was "not in file," Nestor had no registration information to forward to the City.  The City was unaware of the "discretionary discards" until discovery commenced in this lawsuit.

50.  Nestor processed and the City of Akron issued citations for all vehicles that were owned by rental car companies provided there was a clear picture of the vehicle and license plate, and provided the registration information was returned by the BMV.  For instance, citations were issued and violations were paid by the following companies:  a rental car company, "U Save It Auto Rental," located at 449 West Avenue, Tallmadge, Ohio;  a car leasing company, "Car Lease, Inc.," located at 650 Holmes Ave., Akron, Ohio; a truck leasing company "Penske Truck Leasing, Co.," located at 3000 Fortuna Drive, Akron, Ohio; Enterprise Capital (which may be Enterprise rental company); and a Ford dealership (which also may be a rental car).  There were certainly other citations issued for rental vehicles but each of the 11,740 citations have not been reviewed for this disclosure.  Other paid citations include the Boy Scouts of America, towing companies that contract with the City of Akron, United Disability, Waikem Motors (likely a lease), several Yellow Cabs, and the Visiting Nurse Service.

51.  On August 16, 2006, Nestor and the City agreed to a letter of intent to enter into a new contract for the provision of Services.  The Services will continue to focus on school zone speeding violations; Services under the new agreement began on August 30, 2006, coinciding with the commencement of the City of Akron's 2006-2007 school year.

19

(5:06 CV 0139; 5:06 CV 0154)

52.  Nestor and the City are in the process of finalizing the new contract, the written Policies and Procedures ("P&P"), and implementing the Services for the new contract.  Under the new agreement, there are no exempt vehicles.

53.  Under the pilot program contract, from October 28, 2005 through December 12, 2005, the amount of the civil violation was originally $150.00 for vehicles exceeding the posted speed within 15 miles per hour, and $250.00 for vehicles exceeding the posted speed by 15 or more miles per hour.  On December 12, 2005, the civil violation for the pilot program was changed to $35.00.  The vehicle owners that were cited and paid prior to December 12, 2005 at the higher amounts each received a refund of all amounts paid in excess of $35.00.

54.  Under the pilot program contract, the City deposited $418,960.02 in civil violations (having subtracted $1,860 in NSF checks).  From that amount, the City refunded $122,872 to violators, and paid Nestor $188,399. The balance remaining with the City was $107,689.02. (These figures include all pilot program payments with the exception of one Nestor invoice for August not yet received and paid in the approximate amount of $1,300.)

55.  Under the new agreement, during the first two weeks of the school year (August 30, 2006 through September 12, 2006), the civil violation remained at the lower level of $35.00 as a warning period.  Civil violations occurring on or after September 13, 2006 are $100.00 from which Nestor will be paid $19 per paid citation.

56.  The City has not yet instituted collection proceedings to recover any of the unpaid civil violations.


**Pursuant to Rule XVIII, § 2(C)**, the names of the parties are:

**In Case 1**:                                      **In Case 2:**

Plaintiff:      Kelly Mendenhall          Plaintiffs:      Janice A. Sipe
                                                                        Joanne L. Lattur
                                                                        Wayne H. Burger


**In Both Cases:**

Defendants:   City of Akron, Ohio
                       Nestor Traffic Systems, Inc.

(5:06 CV 0139; 5:06 CV 0154)

**Pursuant to Rule XVIII, § 2(D)**, the names, addresses, and telephone numbers of

counsel for each party are:


COUNSEL FOR KELLY MENDENHALL:
Jacquenette S. Corgan
Ste. 201
190 North Union Street
Akron, OH 44304
330-535-9160
Fax: 330-762-9743
Email: j.corgan@justice.com


and

Warner Mendenhall
Ste. 201
190 North Union Street
Akron, OH 44304
330-535-9160
Fax: 330-762-9743
Email: warnermendenhall@hotmail.com

COUNSEL FOR THE CITY OF AKRON:
Stephen A. Fallis
City of Akron Law Department
161 South High Street, Ste. 202
Akron, OH 44308
330-375-2030
Fax: 330-375-2041
Email: fallist@ci.akron.oh.us

and

Richard Gurbst
Squire, Sanders & Dempsey - Cleveland
4900 Key Tower
127 Public Square
Cleveland, OH 44114
216-479-8607
Fax: 216-479-8777
Email: rgurbst@ssd.com

(5:06 CV 0139; 5:06 CV 0154)

COUNSEL FOR JANICE A. SIPE,
JOANNE L. LATTUR AND WAYNE H.
BURGER
Antoni Dalayanis
5th Floor
12 East Exchange Street
Akron, OH 44308
330-315-1060
Fax: 800-787-4089
Email: lawyer@bright.net

COUNSEL FOR NESTOR TRAFFIC
SYSTEMS, INC
Donald W. Herbe
Squire, Sanders & Dempsey - Cleveland
4900 Key Tower
127 Public Square
Cleveland, OH 44114
216-479-8312
Fax: 216-479-8777
Email: dherbe@ssd.com

Heather L. Tonsing
Squire, Sanders & Dempsey - Cleveland
4900 Key Tower
127 Public Square
Cleveland, OH 44114
216-479-8500
Fax: 216-479-8780
Email: htonsing@ssd.com

Richard Gurbst
Squire, Sanders & Dempsey - Cleveland
4900 Key Tower
127 Public Square
Cleveland, OH 44114
216-479-8607
Fax: 216-479-8777
Email: rgurbst@ssd.com

**Pursuant to Rule XVIII, § 2(E)**, the party designated at the "moving party" is Kelly

Mendenhall.

Respectfully submitted,


  November 29, 2006                          *s/ David D. Dowd, Jr.*
Date                                         David D. Dowd, Jr.
                                             U.S. District Judge

22